FILED
2014 Aug-29 AM 11:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **BENJAMIN LITTLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | **1:13-cv-165-KOB** |
| **ROBERT J. DEAN, JR., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This matter comes before the court on Defendants' Motion for Summary Judgment. (Doc. 17). Plaintiff Benjamin Little brings this § 1983 and state law suit against Defendants Robert J. Dean, Jr., Don A. Hoyt, Tana Bryant, Layton McGrady, and the City of Anniston, Alabama.  The complaint arises out a encounter between Plaintiff Little and Defendants over Little's arrest for allegedly violating a city ordinance regarding the condition of residential properties on East 23rd Street in Anniston.

Count I of the complaint alleges "negligence by municipality in hiring and failing to adequately supervise police officers and employees" under 42 U.S.C. § 1983 and § 1988[1] and claims underlying constitutional violations of assault, battery, false arrest, false imprisonment, and interference with civil rights. Count II of the complaint alleges "conspiracy to interfere with Plaintiff's constitutional rights" under § 1983 and § 1988[2] and claims the Defendants conspired to deprive the Plaintiff of his rights to free association, to be free from unreasonable arrest and

---

[1]Plaintiff seeks attorney's fees via 42 U.S.C. § 1988.

[2]Plaintiff seeks attorney's fees via 42 U.S.C. § 1988.

seizure, to be free from wrongful conviction and imprisonment, to be free from malicious

prosecution, assault, and battery, and to due process of law. Count III alleges false arrest under

§ 1983, Count IV alleges malicious prosecution under § 1983, and Count V alleges assault and

battery under § 1983 and 29 U.S.C. § 2679(2)(a)[3]. Counts VI through IX allege Alabama state

law claims for assault and battery, false imprisonment, negligence, and slander. (Doc. 1).

Defendants move for summary judgment, arguing that no disputes of material fact exist

and that Defendants are entitled to judgment as a matter of law. For the following reasons, the

court will DISMISS WITHOUT PREJUDICE Plaintiff's state law claims against all Defendants

in Counts VI through IX.  The court will DISMISS WITH PREJUDICE the assault and battery

and interference with civil rights portions of Count I and Count V in their entirety against all

Defendants and Count III as against Defendant Bryant.

The court finds that Defendants' motion for summary judgment is due to be GRANTED

as to all claims against Defendant McGrady, as to the false arrest and false imprisonment

portions of Count I against all Defendants, as to Count III as against all Defendants except

Defendant Bryant, and as to Counts II and IV in their entirety against all Defendants. The court

will ENTER JUDGMENT in favor of Defendants on these summary judgment claims only.  No

counts will remain pending.

## I.     STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary

judgment allows a trial court to decide cases when no genuine issues of material fact are present

---

[3]No such statute exists in the United States Code. The court assumes that Plaintiff intends
to cite 28 U.S.C. § 2412, which he references later in Count V. That section provides for costs
and fees to a prevailing party.

and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim."  *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).   In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its]

own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e) ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). "Even if a district court 'believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.'" *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) (citing *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006)). The court should not disregard self-serving statements made in sworn testimony simply because they are self-serving at the summary judgment stage, and if the self-serving statements

4

create a genuine issue of material fact, the court should deny summary judgment on that basis. *Id.* at 1253.

Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The nonmoving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## II.    FACTUAL HISTORY

To the extent that either party included arguments in their fact section, the court will disregard those arguments. The parties had permission from the court to exclude their fact sections from the thirty-page limitation of their initial briefs (Order dated 2/25/2014), but the court did not intend that this exception be used to sneak in extra arguments. Furthermore, the court did not intend that this exception be used to bombard the court with extensive, unnecessary, immaterial facts. The following facts are those that the court finds undisputed, material and relevant to this case:

This case concerns at least three residential properties in the City of Anniston on East 23rd Street that have been blighted properties for many years. (Doc. 25, ¶ 1). Anniston's City Ordinance 11-O-22 adopted the International Property Maintenance Code of 2009 ("IPMC") into law. The City passed the IPMC Ordinance to protect the public health, safety and welfare of the City's citizens. (Doc. 18, Exhibit 11 &12; Doc. 27, Exhibit 2). Section 301.3 of the IPMC

5

Ordinance states that "[a]ll vacant structures and premises thereof . . . shall be maintained in a clean, safe, secure and sanitary condition as provided herein so as not to cause a blighting problem or adversely affect the public health or safety." The official commentary explains that "this section establishes the code official's authority to order the cleanup of vacant lands and the securing of vacant structures that might present an attractive nuisance." (Doc. 18, ¶ 3; Doc. 25).

The IPMC Ordinance defines the "code official" as "[t]he official who is charged with the administration and enforcement of this code, or any duly authorized representative." Defendant Tana Bryant has served as the City's sole code official since 2007. Her job included making contact with the property owners about IPMC and nuisance violations, discussing plans for compliance, and coordinating enforcement through the City's IPMC and/or nuisance ordinance procedures. (Doc. 25, ¶ 4; Doc. 18, Exhibit 5).

Defendant Robert Dean, Director of the City's Department of Public Works ("DPW") supervised Ms. Bryant. Mr. Dean reported to Defendant Don Hoyt, who served as City Manager. (Doc. 25, ¶ 6). Mr. Hoyt testified that he had authority and responsibility over the DPW and code enforcement and that he delegated his authority to Mr. Dean and Ms. Bryant. (Doc. 25, pg. x; Doc. 27).

Plaintiff Benjamin Little served as a City Councilperson and the pastor of Gaines Refuge Full Gospel Methodist Church. Mr. Little signed the Church's articles of incorporation on behalf of the incorporators of the Church corporation on October 22, 2004, swore under oath that he was a trustee on the Church's mortgage on April 20, 2009, is referred to as a church "elder" in various Church documents, and is currently listed as the Church's registered agent for service. (Doc. 25, ¶ 7).

Prior to his arrest, Mr. Little complained to Mr. Hoyt about the job performance of Mr. Dean. He also received citizen complaints against Ms. Bryant and informed Mr. Hoyt and Mr. Dean about those complaints and Ms. Bryant's disrespectful behavior to citizens. (Doc. 25, pg. xi, Doc. 27).

Mr. Little also complained to Mr. Hoyt and others in the City's government for many years about the East 23rd Street properties, which were close to the Church. He did this both on behalf of the Church and on behalf of many citizens who complained to Mr. Little as their councilperson. (Doc. 25).

On January 7, 2009, Ms. Bryant sent a letter to Barnwell, LLC, the previous owner of the East 23rd Street properties, titled "Notice OF Violation regarding property located at 419 E. 23rd St." In the letter, Ms. Bryant stated "it has come to the attention of the City of Anniston that your property is full of liter and debris. There has also been debris thrown over the bank to the neighboring property just west of your property." The notice gave a specific description of the condition deemed to be unsafe. (Doc. 25, pg. xx, Doc. 27, pg. vii). This letter did not mention the recipient's right to appeal. (Doc. 25, Exhibit 6).

In early to mid 2011, Mr. Little complained more vigorously. As a result, in early June 2011, Ms. Bryant, Mr. Hoyt, Mr. Dean, and Property Inspector Larry Talley inspected the properties with Mr. Little. (Doc. 18, ¶¶ 8-9; Doc. 25).

The Church owns many residential properties, some of which, at some point, have generated rental income for the Church. On June 25, 2011, through a formal corporate resolution, the Church decided to acquire the East 23rd Street properties. It formally "assign[ed] and authoriz[ed] the Pastor and Trustees of the Church, to take necessary action to acquire" the

properties. On July 13, 2011, the Church purchased the East 23rd Street properties for $10.00 and received the deed to the properties. (Doc. 18; ¶¶ 10-12; Doc. 25).

After the Church acquired the properties, Mr. Little asked Mr. Hoyt and Mr. Dean to visit the properties to see the very poor condition of the property and the work the Church was doing to clean the property. (Doc. 25, pg. vii; Doc. 27).

In August 2011, Mr. Little and other Church members attempted to clean the properties. They placed mixed piles of debris and brush on the City's right-of-way. However, a substantial amount of material remained on the properties, and the structures had broken windows as well as unsecured and open doors. (Doc. 18, ¶¶ 13-14; Doc. 25).

Under City Ordinance No. 11-0-9, which is not a part of the IPMC, when a nuisance problem arises on a property, the City code enforcement officer can proceed through the nuisance abatement process. That process involves examining public records, contacting owners, reporting to the City Manager, referring the issue to the City Attorney or an outside professional, and reporting in writing to the City Council with a request for it to pass a resolution declaring the property a nuisance. As a part of this process, the City sometimes abates the nuisance itself, then attempts to recover the abatement costs from the property owners. (Doc. 25, pgs. ix-x; Doc. 27, pg. vi).

Ms. Bryant and Mr. Dean determined that the City could not afford to abate the nuisance itself. Mr. Little disputes that the City could not afford to proceed through the nuisance abatement process because of lack of funds. (Doc. 25, ¶ 15). According to Ms. Bryant, on October 12, 2011 at 3:41 pm while Mr. Little was in Mr. Hoyt's office on other matters, she handed Mr. Little a written warning for the violations. The warning stated: "You are in violation

of City of Anniston Ordinance. You have 10 days to abate the above described violation. Failure to correct the violation can and will result in prosecution." The warning listed the Church as the "owner" and Plaintiff as the "owner or person in charge." According to Ms. Bryant, Mr. Little refused to sign or accept the warning, stating that he was not the owner. Mr. Hoyt's assistant, Myra Bushard, testified that she witnessed the refusal to sign or accept the warning. Mr. Little denies that Ms. Bryant attempted to hand him a written warning. (Doc. 25, ¶¶ 18-19).

When asked why she was giving Mr. Little the notice of the violations, Ms. Bryant testified that she believed Mr. Little to be the "person in charge" because "he is the one that has been up at the property;" "[h]e is the one that wants something done with the property;" "[h]e's the one that has initiated all contact regarding that property with the City;" "[h]e's the one that has wanted the City to come up and take care of the issues on the property" and "not the members of the congregation;" and he was the Church representative who was corresponding with her about the properties. Ms. Bryant further testified that "[a]ccording to the [IPMC]," Plaintiff was the "person having control of [and] care of" the property, and that she construed "control of" in the IPMC as "[a]ny person that is authorized to make any decisions, make any requests concerning that property." Similarly, Mr. Dean testified, "[s]o Councilman Little at the time was the point of contact. So, . . . everything . . . between Tana Bryant and myself, everything was, you know, Councilman Little, Councilman Little. So that's how we identified him as being the caretaker of those properties." (Doc. 18, ¶ 20; Doc. 25).

Ms. Bryant then mailed the warning to the Church and posted notices on the properties. Mr. Little disputes that he received a notice of code violation by mail at that time and disputes that a notice was posted on church properties in 2011. (Doc. 25, ¶¶ 21-22). Following the

9

Church's failure to respond to the alleged notices, on October 21, 2011, Ms. Bryant issued formal written notices to the Church about the violations by certified mail. The notices stated that the Church was in violation of § 301.3 of the IPMC Ordinance. The United States Postal Service attempted to deliver these letters on October 21, 2011, October 26, 2011, and November 5, 2011. USPS returned the letters as unclaimed on November 13, 2011. (Doc. 18, ¶ 23 and Exhibit 17).

On October 23, 2011, Ms. Bryant received a letter written by Mr. Little on Church letterhead describing him as Elder and Pastor. It states:

> We are in receipt of your letter stating that there are items in front of 437 East 23rd Street that we must move. We placed some boards on the city right of way to be picked up, those items are allowed by the city, we have notice other items has been added to the pile. Please provide proof of any item that we placed on this pile that is not allowed by the city.

(Doc. 18, Exhibit 18).

On October 26, 2011, Ms. Bryant wrote back, thanking Mr. Little and the Church for their partial cleanup, but reminding them that she did not have to prove who put it there, only that the items were on Church property. She stated that "[i]f there are mitigating circumstances, please let me know." On November 7, 2011, Mr. Little wrote an email to Ms. Bushard, stating that "[t]he Church is not going to move these items. We did not put them there." (Doc. 18, ¶¶ 25-26; Doc. 25).

Section 111.1 of the IPMC Ordinance states that "[a]ny person directly affected by a decision of the code official or a notice or order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within 20 days after the day the decision, notice or order was served." Section 111.7 of the IPMC Ordinance also states that "[a]ny person, whether or not a previous party of the appeal, shall have

the right to apply to the appropriate court for a writ of certiorari to correct errors of law." Neither the Church nor Mr. Little appealed the citation. (Doc. 18, ¶ 27).

Mr. Little disputes that he had a right to appeal a decision by Ms. Bryant to the board of appeals because he did not receive a notice of decision and because the notice of decision did not include language "[i]nform[ing] the property *owner* of the right to appeal," as required by IPMC § 107.2. (Doc. 25, ¶ 27) (emphasis in original).

Section 106.3 of the IPMC Ordinance states that "[a]ny person failing to comply with a notice of violation or order served in accordance with Section 107 shall be deemed guilty of a misdemeanor or civil infraction as determined by the local municipality, and the violation shall be deemed a *strict liability offense*." (Doc. 18, Exhibit 12) (emphasis in original).

Section 107.2 of the IPMC Ordinance states that notices shall "1. Be in writing. 2. Include a description of the real estate sufficient for identification. 3. Include a statement of the violation or violations and why the notice is being issued. 4. Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the *dwelling unit* or structure into compliance with the provisions of this code. 5. Inform the property *owner* of the right to appeal. [and] 6. Include a statement of the right to file a lien in accordance with Section 106.3." (Doc. 18, Exhibit 12) (emphasis in original).

Section 107.3 of the IPMC Ordinance states that "[i]f the notice is returned showing that the letter was not delivered, a copy thereof shall be posted in a conspicuous place in or about the structure affected by such notice." (Doc. 18, Exhibit 12).

Section 106.4 of the IPMC Ordinance states that "[t]he penalties include monetary fines, as well as possible imprisonment," and "[t]he severity of the fine or penalty is left for the

jurisdiction to establish." The City's residual penalty ordinance states that penalties for ordinance violations include "a fine not exceeding five hundred dollars ($500.00) or by imprisonment or hard labor not exceeding six (6) months, or both." (Doc. 25, ¶ 28).

Before going to the Anniston Police Department ("APD") to swear out a warrant, Ms. Bryant met with Mr. Dean and Mr. Hoyt about the violations. They agreed that they had to treat Mr. Little like any other resident. Mr. Dean talked to Defendant Layton McGrady, the Chief of the APD, about the violations. Chief McGrady told Mr. Dean to send Ms. Bryant to the APD. (Doc. 18, ¶¶ 29-30; Doc. 25).

On December 14, 2011, Ms. Bryant went to the APD and swore a complaint before the City magistrate against Mr. Little, testifying that the subject properties had been in violation of § 301.3 from October 20, 2011 through November 23, 2011. Ms. Bryant testified that she never had to issue a warrant for anyone's arrest before; she stated:

> [W]hen I send letters, people comply. And this is the first time I've ever had a case where someone refused contact with me, did not want to discuss a case with me. You know, I've had other councilmen that I've had to send letters to. They complied. This is the only person that has never complied and was issued a warrant for this violation. . . . But I always get responses when I send the first letter out, and you know, people call up and, well, I got this letter in the mail, what do I do? And then I'll tell them what to do, and they comply.

(Doc. 18, ¶ 32; Doc. 25).

When asked whether probable cause existed to arrest Mr. Little, Mr. Dean testified:

> We tr[ied] to make the best educated interpretation. Between myself, Tana Bryant, and [Mr. Hoyt], we all had the same conclusion. . . . [I]t went through . . . the process, through the police and the magistrate, . . . which had opportunities to say, stop, and we're not going to continue this process or whatnot, there's not justification for it, I felt . . . there was obviously due process involved to go ahead and . . . for the warrant. . . . I felt that . . . from our discussion . . . there was probable cause and, as it continued forward . . . from the police to the magistrate to the warrant [we] felt like

12

the due process . . . that was the call to make.

(Doc. 18, ¶ 33; Doc. 25).

At 4:17 p.m. on December 14, 2011, that same day, Officer Steven Wade handed the arrest warrant to Mr. Little, told him that he had to handcuff him, and walked him across the street to the APD to be booked. The APD never placed Mr. Little in a cell and released him on his own recognizance. (Doc. 25, ¶ 34).

On January 3, 2012, Ms. Bryant sent a second round of property notice violations to the church. These notices had additional information about how the property was unsafe and provided notice of the right to appeal. (Doc. 25, pg. xxi-xxii; Doc. 27, pg. vii).

On February 17, 2012, Mr. Little signed an application for a construction/demolition permit for the Church for the East 23rd Street properties. In the permit application, he not only personally "agree[d] to comply with all applicable building codes, zoning ordinances and all other laws/regulations" of the City, he personally "acknowledge[d] that [he was] responsible for the disposal of all demolition debris." (Doc. 25, ¶ 35).

Because the East 23rd Street properties were still not in compliance, Ms. Bryant swore out a second set of complaints against Mr. Little on April 12, 2012. Mr. Little was not arrested; instead, Officer Matt Caballero served three summons on Mr. Little on the same day, but Mr. Little refused to sign them. The City nolle prossed the first set of charges on April 11, 2012, and nolle prossed the second set on May 13, 2012. (Doc. 18, ¶¶ 36-37; Doc. 25).

Near the Church's property on 23rd Street stands a house that does not belong to the Church. The house is in far worse condition than the Church's East 23rd Street houses, and the City has not placed notices on the property or arrested the owner. (Doc. 25, pg. vii; Doc. 27).

13

### III.    DISCUSSION

Plaintiff concedes in his response that the court should grant summary judgment as to Defendant Layton McGrady, the chief of police. (Doc. 25, pg. 30). Therefore, the court will GRANT summary judgment for Defendant McGrady as to all claims against him.

### A.    Section 1983 Claims

As a preliminary matter, the court must address whether Plaintiff asserts a due process claim in his complaint, as this is a point of contention among the parties in their briefs. As the court reads the complaint, it incorporates references to Plaintiff's due process rights in various claims such as the conspiracy claim, but does not make an independent due process claim. Therefore, the court will address Plaintiff's due process rights as they relate to the nine remaining counts in his complaint, but will not address them as an independent claim. Because the claims of municipal and supervisory liability, as well as conspiracy, require underlying constitutional harms, the court will first consider Counts III, IV, and V.

The court also notes that Plaintiff brings claims against Defendants Dean, Hoyt, and Bryant in their official capacities, as well as in their individual capacities. The Supreme Court has held that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" and that "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotations omitted). Therefore, the court will address Plaintiff's official capacity claims in conjunction with the claims against the City after it has determined whether underlying constitutional violations exist.

14

i.        **Count III - False Arrest**

Plaintiff alleges that Defendants are liable under § 1983 for falsely arresting him. Specifically, he claims that Defendant Bryant's false and erroneous representations caused the filing of the criminal complaint that led to his unlawful arrest; that Defendants Dean and Hoyt failed to adequately train, supervise, or control Defendant Bryant; and that Defendants City, Dean, and Hoyt caused the violation of Plaintiff's constitutional rights through their customs, policies, regulations, training, and/or practices as authorized policy makers. (Doc. 1, ¶¶ 50-63).

The court finds that Plaintiff's claims based on the actions of Defendant Bryant cannot go forward as false arrest claims, but rather must be analyzed under Plaintiff's claim for malicious prosecution. Defendant Bryant did not arrest Plaintiff; she swore a complaint before the City magistrate against Plaintiff, resulting in an arrest warrant and his subsequent arrest.  The Eleventh Circuit has held that "[o]btaining an arrest warrant is one of the initial steps of a criminal prosecution. Under these circumstances (that is, where seizures are pursuant to legal process), we agree with those circuits that say the common law tort 'most closely analogous' to this situation is that of malicious prosecution." *Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir. 1996). Therefore, the court will DISMISS the false arrest claim as against Defendant Bryant.

Although Officer Caballero, who arrested Plaintiff, is no longer a defendant in this case, the court will evaluate whether he committed a constitutional violation in arresting Plaintiff because such an underlying violation is necessary to Plaintiff's remaining false arrest claims against the City for municipal liability and against Defendants Dean and Hoyt for supervisory liability. Both supervisory liability and municipal liability are dependent upon a predicate finding of an underlying constitutional violation—in this case, false arrest. *See Cottone v. Jenne*, 326

15

F.3d 1352, 1360 (11th Cir. 2003); s*ee also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

"The existence of probable cause at the time of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). If an arrest is conducted under the authority of a warrant, the party challenging the arrest carries the burden of showing the warrant to be invalid and not properly based on probable cause. *See United States v. de la Fuente*, 548 F.2d 528, 534 (5th Cir. 1977); *Batten v. United States*, 188 F.2d 75, 77 (5th Cir. 1951).[4] Qualified immunity provides a shield against claims of false arrest without probable cause if arguable probable cause exists; i.e., if a reasonable officer could have believed that probable cause existed for the arrest. *Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999).

Probable cause to arrest exists when an arrest is "objectively reasonable based on the totality of the circumstances." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). The Eleventh Circuit has held that "[t]his standard is met when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (internal quotations omitted).

Defendants argue that the East 23rd Street properties were in violation of § 301.3 of the IPMC Ordinance, which gives Defendants statutory authority to arrest Plaintiff for the violation,

---

[4] After the Fifth Circuit split and the Eleventh Circuit was established, the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down before the close of business on September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

16

which is a strict liability offense. They argue that Plaintiff was subject to arrest as an "owner" of the properties under the IPMC definition of an owner. In the alternative, Defendants also argue that they are entitled to qualified immunity. (Doc. 18, pgs. 2-11).

Plaintiff responds, arguing that Defendants did not have probable cause for Plaintiff's arrest because "[t]he facts and circumstances surrounding Bryant seeking a complaint and warrant for the arrest of Little was absent all semblance [of] due process." (Doc. 25, pg. 4). Plaintiff essentially argues that because Defendant Bryant did not provide Plaintiff with proper notice of a violation, no violation occurred; therefore, no probable cause existed.

This argument has previously been deemed unsuccessful by the Eleventh Circuit. In a case dealing with the arrest of trespassers in Florida, the plaintiffs' arguments regarding probable cause focused on their lack of notice, as required under the Florida trespassing statute. In considering plaintiffs' false arrest claim, the Court noted that "the question before us is not whether Plaintiffs' were actually guilty of the crime of trespassing," but whether probable cause existed. *Joyce v. Crowder*, 509 Fed. Appx. 969, 970 n. 1 (11th Cir. 2013). Restating the probable cause standard, the Court found that "probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Id.* (internal quotations omitted). Therefore, even if the court were to find that Plaintiff received insufficient notice of his violation to ultimately be held liable for it, such a finding would not establish that the arresting officer lacked probable cause for Plaintiff's arrest.

Plaintiff also makes alternative arguments, alleging that Bryant did not follow proper procedure regarding nuisance properties and that the Defendants did not follow Alabama law regarding valid service of process on church entities, which requires service be made on church

17

trustees. As to Plaintiff's first alternative argument regarding nuisance procedure, the court will address this argument along with the other claims based on Defendant Bryant's actions when it addresses malicious prosecution. Plaintiff's second alternative argument regarding serving church entities is unpersuasive because the warrant that Officer Caballero served was not for the church entity, but for Plaintiff as an individual, the person known by City officials to be responsible for the property in question..

Therefore, looking at the "facts and circumstances within the officer's knowledge," the court finds that Officer Caballero had probable cause to arrest Plaintiff pursuant to a facially valid warrant. Both parties agree that a substantial amount of material remained on the properties and the structures had broken windows as well as unsecured and open doors. Furthermore, Ms. Bryant swore that Plaintiff was in violation of the IPMC, and a magistrate judge issued the warrant.

Given that no underlying constitutional violation occurred in Plaintiff's actual arrest, Plaintiff cannot maintain a false arrest claim against the City or Defendants Hoyt or Dean. As such, the court will GRANT Defendants' motion as to Count III of the complaint in its entirety.

### ii.    Count IV - Malicious Prosecution

Plaintiff claims that Defendant Bryant "falsely, maliciously, and without probably [sic] cause, caused a criminal complaint to be filed against Plaintiff." (Doc. 1, ¶ 65). Plaintiff also claims that Defendant Hoyt approved the prosecution and that the customs, policies, regulations, training, and/or practices of authorized policy makers including Defendant City and Defendants Dean and Hoyt caused the violations of Plaintiff's constitutional rights. The court will first determine whether Defendant Bryant committed an underlying tort of malicious prosecution.

18

To succeed on a § 1983 claim for malicious prosecution, the plaintiff must first show the elements of the common law tort of malicious prosecution and then must show a violation of his Fourth Amendment right to be free from unreasonable seizures. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010). The elements of a common law malicious prosecution claim are: (1) a prior judicial proceeding, (2) instigated by the defendant, (3) without probable cause, and (4) with malice, (5) which was terminated in favor of the plaintiff, and (6) damages. *Delchamps, Inc. v. Larry*, 613 So. 2d 1235, 1238 (Ala. 1992) (citing *Brown v. Parnell*, 386 So. 2d 1137, 1138 (Ala. 1980)).  Probable cause exists when the particular facts and circumstances are sufficient to warrant a person of reasonable caution in the belief that an offense has been committed.  *Delchamps*, 613 So. 2d at 1238.  "[A] conviction is prima facie evidence of the existence of probable cause for instituting the prosecution," but "this presumption can be rebutted by competent evidence that 'clearly overcomes' the presumption."  *Id.* (quoting *Brown*, 386 So. 2d at 1138).

Defendants argue that Plaintiff suffered no seizure during the prosecution against him because he was not restrained *after* he was released on his own recognizance, and, thus, could not "prove a seizure in relation to the prosecution" for the tort of malicious prosecution. (Doc. 18, pgs. 14-15). Defendants cite *Kingsland v. City of Miami*, 382 F.3d 1220 (11th Cir. 2004) as "controlling" authority on this matter.  (Doc. 18, pg. 14)  However, *Kingsland* is *not* "controlling" because that case involves a *warrantless* arrest; the undisputed facts in the present case show that Plaintiff's arrest was pursuant to a complaint sworn before a City magistrate and a subsequent arrest warrant.  As such, the Eleventh Circuit's analysis in *Kingsland*, that the Defendants quoted in their brief, regarding when the seizure occurs pursuant to a *warrantless*

19

arrest for Fourth Amendment purposes is inapplicable.  (*See* Doc. 18, pg. 14). Unquestionably, a seizure occurred in this case when Officer Caballero arrested Plaintiff pursuant to an arrest warrant.  The pertinent question is whether Ms. Bryant acted without probable cause and with malice in swearing out the warrant for Plaintiff's arrest for Plaintiff to establish his malicious prosecution case.

In considering a malicious prosecution claim, the Eleventh Circuit has determined that the Constitution "prohibits an officer from making perjurious or recklessly false statements" in support of an arrest warrant. *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994).  However, negligent misrepresentations or omissions do not constitute a constitutional violation. *Id*.

Defendants argue that Plaintiff has failed to prove the elements of a malicious prosecution claim under Alabama law. Specifically, they claim that Plaintiff cannot prove the lack of probable cause or malice. (Doc. 18, pg. 15).

In response, Plaintiff argues that Defendant Bryant did not have probable cause to initiate the arrest warrant against Plaintiff because a violation cannot be established without proper notice, and she knew she had failed to provide proper notice to him. Specifically, Plaintiff argues that the notices that Defendant Bryant allegedly sent to Plaintiff did not contain a description of the condition deemed unsafe, a description of the necessary repairs or improvements, or language regarding the right to appeal, as required by Section 107.2 of the IPMC. Furthermore, Plaintiff asserts that Defendant Bryant failed to post a notice on the property, as required by Section 107.3 of the IPMC if a certified or registered letter is returned undeliverable. (Doc. 25).

Plaintiff claims that Defendant Bryant had issued proper notices to other entities <u>before</u> the church assumed ownership of the property and issued proper notices to Plaintiff <u>after</u> his

arrest, showing that she did know how to issue a proper notice. From this argument, Plaintiff

asks the court to infer that Defendant Bryant's failure to provide adequate notice was intentional,

showing that she did not have a reasonable belief that probable cause existed and showing that

her prosecution of Plaintiff was malicious. (Doc. 25).

Defendants reply to this argument by asserting that the notices Defendant Bryant sent to

Plaintiff were not deficient and that Plaintiff's written responses to Defendant Bryant show that

he received at least one or more of the notices and was aware what needed to be done on the

property. (Doc. 27, pg. 10).

The court agrees with the Defendants that Plaintiff is unable to establish the lack of

probable cause or the presence of malice based on the notices—or lack or insufficiency

thereof—provided to Plaintiff. Defendant Bryant claims that she handed Plaintiff a written

warning on October 12, 2011, that she mailed that written warning to the church shortly

thereafter, that she posted notices on the properties, and that she issued formal notices by

certified mail on October 21, 2011. Both the written warning and the formal notice contained

language identifying the problems on the property and how to address those problems. (Doc. 18,

Exhibits 14 & 16).

Although Plaintiff denies having received any of these notices, the evidence shows that

on October 23, 2011, Plaintiff sent a letter to the Code Enforcement Section at the City; that

letter read: "We are in receipt of your letter stating that there are items in front of 437 East 23rd

Street that we must move." (Doc. 18, Exhibit 18). According to this letter, Plaintiff received at

least one of Defendant Bryant's notices and was aware of both the problem with the property and

the proposed solution. Furthermore, Plaintiff's apparent receipt of one of the notices obviates the

21

need for Defendant Bryant to follow the procedure under Section 107.3 of the IPMC and post a notice on the property.

Therefore, the only technical deficiency with the notice Plaintiff received was the lack of reference to his right to appeal. The court finds that even if Defendant Bryant's *other* notices did include language about the right to appeal, the lack of such language *in this case* is not enough to establish malice or even enough to establish a cognizance of insufficient notice that would defeat probable cause. Furthermore, the record reflects that only the notice issued *after* the notices at issue here contained the appeal language.  Also, the record contains a notice that Defendant Bryant issued to another individual prior to the events concerning Plaintiff that also did *not* contain information about a right to appeal. (Doc. 25, Exhibit 6).

The court finds that the circumstances surrounding Defendant Bryant making a sworn statement to the magistrate judge to instigate judicial proceedings that led to an arrest warrant do not indicate a lack of probable cause. The undisputed evidence shows that on December 14, 2011, Defendant Bryant swore a complaint before the City magistrate, testifying that the East 23rd Street properties were, and had been, in violation of § 301.3, the section of the code requiring that vacant structures and land be kept in "a clean, safe, secure and sanitary condition . . . so as not to cause a blighting problem or adversely affect the public health or safety." (Doc. 18, Exhibit 12). This section states nothing about the notice requirement. The notice requirement is located in § 106.3 of the IPMC, which states that "[a]ny person failing to comply with a *notice* of violation . . . shall be deemed guilty of a misdemeanor or civil infraction . . . ." (Doc. 18, Exhibit 12) (emphasis added). Even under this section, Defendant Bryant was likely to have thought she had complied, as the section only mentions notice generally and Plaintiff's October 23, 2011

22

letter confirmed that he *had* received notice. To find the deficiency in the notice requirement, the court must trace back to a *third* code section, § 107.2, which actually contains the requirement of informing the property owner of the right to appeal. Given that Defendant Bryant merely stated that Plaintiff had violated § 301.3 and did not make any affirmative statements about § 106.3 or § 107.2, the court finds that her statement was truthful and made in good faith.  Further, nothing in the record suggests that the condition of the properties did not violate § 301.3.

In addition, a technical deficiency does not defeat probable cause.  As the court previously cited, the Eleventh Circuit has determined that the notice requirement in a Florida trespassing statute did not mean that probable cause did not exist for an arrest under the statute when the notice had not been given. *Joyce*, 509 Fed. Appx. at 970 n. 1 ("probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction").

Furthermore, even if Defendant Bryant's statements in support of the arrest warrant were somehow considered false because of the deficiency in the notice, the false statement would only support a malicious prosecution claim *if* it was "perjurious or reckless[]." *Kelly*, 21 F.3d 1554. A negligent omission in her testimony is not grounds for a claim and, as the court has already noted, Plaintiff has not shown that the lack of appeal language in the notices amounts to anything more than a negligent omission.

Plaintiff also makes two alternative arguments in an attempt to show that Defendant Bryant lacked probable cause to initiate judicial proceedings against him. The court has already addressed his argument that the Defendants did not follow Alabama law regarding valid service of process on church entities, which requires service be made on church trustees (see Section

III.A.i, *infra*); that argument is unpersuasive because the warrant was not for the church entity, but for Plaintiff as a responsible individual. (Doc. 25, pg. 10-12).

Plaintiff's other argument is that Defendant Bryant did not follow proper procedure regarding abatement of nuisance properties because Plaintiff "at that time, was a sitting Anniston City Council member and her surreptitious plan for his arrest would cause him anguish, embarrassment and humiliation." (Doc. 25, pg. 11).

Defendants respond to this argument by asserting that Plaintiff was not arrested for violation of the ordinance addressing abatement and that "municipalities and their officers have many tools to remedy property violations and that no law required them to try abatement first." (Doc. 27, pg. 5).

The court agrees with the Defendants. Plaintiff has not cited, and the court has not found, any law or precedent requiring the Defendants to pursue the abatement procedure before or instead of the IPMC procedure that Defendants followed. In fact, the § 106.5 of the IPMC itself makes clear that IPMC penalties, including imprisonment and fines, can be instituted *in addition to* abatement procedure, not just as an alternative to it. (Doc. 18, Exhibit 12).

Furthermore, as Defendants point out in their brief, if Plaintiff was attempting to allege that Defendants had selectively enforced the IPMC instead of nuisance laws, any cognizable claim would be for a violation of equal protection. *See Durruthy v. Pastor*, 351 F.3d 1080, 1091 (11th Cir. 2003). Plaintiff has not asserted an equal protection claim. In addition, to support such a claim, Plaintiff would have to establish "(1) that others similarly situated have not generally been prosecuted and (2) that the government's discriminatory selection of him is invidious, or in bad faith that is based on constitutionally impermissible considerations, such as race or religion."

24

*Id*. Plaintiff has not even made arguments as to the second of these points.

Therefore, the court finds that Plaintiff's alternative arguments are not meritorious and that Plaintiff has failed to show the lack of probable cause and malice elements of his malicious prosecution claim. Without showing an underlying constitutional violation committed by Defendant Bryant, Plaintiff also fails to prove the existence of any supervisory or municipal liability based on her actions. As such, the court will GRANT Defendants' motion as to Count IV of the complaint in its entirety.

As an alternative, as to Plaintiff's claim of malicious prosecution against Defendant Bryant in her individual capacity, the court finds that even if Defendant Bryant did not have actual probable cause to initiate proceedings against Plaintiff, for the reasons discussed above, she at the very least had *arguable* probable cause, which is sufficient to afford her the protection of qualified immunity.

### iii.  Count V - Assault and Battery

Count V of Plaintiff's complaint alleges that Officer Caballero assaulted and battered Plaintiff; that the acts were part of the customs, practices, and policies of the City; and that Defendants City, Hoyt, Dan and Bryant acted in concert to deprive Plaintiff of his rights. Defendants address these allegations, calling them the "excessive force theory," in their motion for summary judgment. (Doc. 18, pgs. 12-13).  Nowhere in Plaintiff's response or sur-reply, however, does he make any mention of—or argument as to—this claim. (Doc. 25 & 27). Therefore, the court finds that Plaintiff has abandoned Count V. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 200) (finding that "[t]he appellants' failure to brief and argue this issue during the proceedings before the district

court is grounds for finding that the issue has been abandoned"). The court will DISMISS Count V WITH PREJUDICE in its entirety.

### iv.   Count I - Negligence by Municipality in Hiring and Failing to Adequately Supervise Police Officers and Employees

In Count I Plaintiff alleges that the City breached its duty to supervise and train its employees and prevent them from committing assault, battery, false arrest, false imprisonment and "interference with civil rights." (Doc. 1, ¶ 38). A plaintiff can only maintain a claim against a municipality where an individual officer has inflicted a constitutional harm. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). The court has already determined that no underlying false arrest occurred that supports a constitutional violation. The court has also ruled that Plaintiff has abandoned his assault and battery claim. As to Plaintiff's claim regarding "interference with civil rights," Plaintiff has not offered facts to support such a claim as an independent or distinct claim from the other alleged constitutional violations he listed.  Given that the court has found no constitutional violation, the court need not address the other substantive requirements for establishing municipal liability for these claims.  *See id*. at 799 (concluding that whether a city's policies were proper is "beside the point" if no underlying constitutional violation has occurred); *see also Long v. Slaton*, 508 F.3d 576, 583 n.10 (11th Cir. 2007) (citing *Heller* for the proposition that "whether police policies and regulations were proper is 'beside the point' when 'a person has suffered **no constitutional injury** at the hands of the individual police officer'") (emphasis in the original).  Therefore, the court will DISMISS this claim WITH PREJUDICE as duplicative of Plaintiff's other claims.

The court will, however, address Plaintiff's false imprisonment claim under § 1983, first

determining whether an underlying constitutional violation exists upon which Plaintiff could base his claim for municipal liability. To establish a § 1983 false imprisonment claim, a plaintiff must prove the elements of common law false imprisonment and show that the imprisonment resulted in a violation of due process rights under the Fourteenth Amendment. *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). The elements of common law false imprisonment are "(1) intent to confine, (2) acts resulting in confinement, and (3) consciousness of the victim of confinement or resulting in harm." *Id*. at 1526 n. 2. "[I]n cases dealing with prisoners and other persons in state custody," the plaintiff must show deliberate indifference to the prisoner's life, liberty, or property "to establish a violation of substantive due process rights protected by the fourteenth amendment." *Cannon v. Macon County*, 1 F.3d 1558, 1563 (11th Cir. 1993). A false imprisonment claim, "absent misidentification, depends on an absence of probable cause." *Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009).

Plaintiff makes no claim regarding misidentification; therefore, he relies on his argument regarding lack of probable cause to support his false imprisonment claim. As the court has already determined in the preceding sections, probable cause existed for Plaintiff's arrest and imprisonment. As noted above, because the court has found no constitutional violation, the court need not address the other substantive requirements for establishing municipal liability for this claim. Thus, the court will GRANT summary judgment as to the false imprisonment portion of Count I.

     **v.**     **Count II - Conspiracy to Interfere with Plaintiff's Constitutional Rights**

In Count II, Plaintiff alleges that Defendants conspired together and with others and

reached a mutual understanding to deprive him of his constitutional rights. Plaintiff lists the rights he claims were violated by the conspiracy: the right to free association, the right to be free from unreasonable arrest and seizure, the right to be free from wrongful conviction and imprisonment, and the right to due process of law. Plaintiff also sets out a list of "overt acts" committed by the conspiracy, but each of those acts is encompassed in the claim that Defendants violated one of the rights set out above. (Doc. 1, ¶¶ 43-44).

To state a § 1983 claim for conspiracy to violate a constitutional right, a plaintiff must show a conspiracy existed that resulted in the actual denial of some underlying constitutional right. *Grider v. City of Auburn, Ala*., 618 F.3d 1240, 1260 (11th Cir. 2010).  A plaintiff must prove that the defendants "reached an understanding" to violate the constitutional right at issue, although factual proof of the conspiracy may be based on circumstantial evidence. *Id*.

Defendants assert the intracorporate conspiracy doctrine as a general defense against all of Plaintiff's conspiracy claims. (Doc. 18, pg. 19). The intracorporate conspiracy doctrine "holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Grider*, 618 F.3d at 1261 (citing *McAndrew v. Lockheed Martin Corp*., 206 F.3d 1031, 1036 (11th Cir. 2000) (*en banc*)). "[U]nder the doctrine, a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id*.  The Eleventh Circuit has applied the doctrine to public entities and their employees as well. *Grider*, 618 F.3d at 1261 (citing *Denney v. City of Albany*, 247 F.3d 1172, 1190-91 (11th Cir. 2001)).

In *Grider v. City of Auburn, Ala*., the Eleventh Circuit addressed a claim that two law enforcement officers within the Auburn Police Department conspired to prosecute the plaintiff by

28

making a false bribery charge. *Id*. The Court determined that because the alleged conspiracy involved job-related functions within the defendants' scope of employment as police officers, the doctrine applied to prevent the plaintiff's claims. The Court found that although violating someone's constitutional rights is never a job-related function, "[t]he scope-of-employment inquiry is whether the employee . . . was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job related duties) and in furtherance of the employer's business." *Id*.

Plaintiff alleges that Defendant Bryant issued insufficient notices to Plaintiff, made false statements in support of the arrest warrant for Plaintiff, and erroneously pursued prosecution as opposed to abatement procedures. Regardless of the truth of these allegations, posting notices and coordinating enforcement of the City's IPMC and nuisance procedures fall squarely within the scope of Defendant Bryant's job as code official.

Plaintiff alleges that Defendant Dean participated in the decision to erroneously pursue prosecution as opposed to abatement procedures and did nothing to stop Defendant Bryant's other erroneous actions. Defendant Dean, as Director of the City's Department of Public Works, was Defendant Bryant's supervisor; therefore, advising her in enforcement decisions and other tasks that fall within *her* scope of employment also fall within *his* scope of employment.

As with Defendant Dean, Plaintiff alleges that Defendant Hoyt participated in the decision to erroneously pursue prosecution as opposed to abatement procedures and did nothing to stop Defendant Bryant's other erroneous actions. Defendant Hoyt, as City Manager, supervised Defendant Dean. Therefore, the court finds that just as advising and overseeing Defendant Bryant's tasks falls within the scope of Defendant Dean's employment, Defendant

Hoyt's job duties included advising and overseeing the tasks of *both* Defendant Dean, as his direct supervisee, and Defendant Bryant, as another in the line of his supervision.

Although Plaintiff has dropped his claims against both Officer Caballero and Chief McGrady, the court also finds that to the extent he may still allege that they were participants in the conspiracy, they were also acting within the scope of their employment in approving and issuing arrest warrants.

Because all of the individual Defendants were acting within the scope of their employment with the City when they committed the alleged violations and because the City cannot conspire with itself, the court finds that the intracorporate conspiracy doctrine applies. However, the court may not end the inquiry on this matter until it determines whether any of the exceptions to the doctrine apply.

The Court in *Grider* analyzed three exceptions: (1) an exception for criminal conspiracies where the conduct violates the federal criminal code; (2) an exception where the employee has an "independent personal stake" in his unconstitutional acts and is not acting to further the corporation's illegal objective; and (3) an exception "where the employees 'engage in a series of discriminatory acts as opposed to a single action' over a significant period of time in the employment setting." 618 F.3d 1240, 1262-63 (citing *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 768-70 & n. 9 (11th Cir. 2000)).

Here, the court sees no allegations that the Defendants violated the federal criminal code. As to an "independent personal stake," although Plaintiff has alleged that Defendants intended to embarrass and humiliate him, he has not shown facts of any independent motives separate and apart from their positions with the City. Finally, as to a series of discriminatory acts, Plaintiff's

claims center around one arrest incident and a short series of events leading up to it. Furthermore, Plaintiff makes no claim that these acts were discriminatory, and they did not occur in the employment setting. Therefore, the court finds that none of the exceptions to the intracorporate conspiracy doctrine apply.

In sum, the court finds that Count II of the complaint is barred in its entirety by the intracorporate conspiracy doctrine, which renders all of the alleged acts to be acts of the municipality itself. Therefore, the court will GRANT summary judgment to all Defendants as to Count II in its entirety.

### B.     Alabama State Law Claims

The United States Supreme Court has noted that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Eleventh Circuit has also noted that "[t]he decisions to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) (citation omitted). In exercising its discretion, the court is aware of the Eleventh Circuit's admonition that "[i]f the state claim has become time-barred during the pendency of the federal action then the court should exercise supplemental jurisdiction despite the dismissal of all of the federal claims." *Ingram v. Sch. Bd. of Miami-Dade County*, 167 F. App'x 107, 109 (11th Cir. 2006) (citing *Eubanks v. Gerwen*, 40 F.3d 1157, 1162 (11th Cir. 1994)).

Here, without actually determining which statute of limitations applies to which claims,

the court notes that all of Plaintiffs claims would fall under either the two-year or the six-year statute of limitations set forth in Alabama Code §§ 6-2-34 and 38. Although more than two years has passed since Plaintiff's claims arose, the limitations period is tolled while the claim is pending "and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d); *see Weinrib v. Duncan*, 962 So. 2d 167, 169 (Ala. 2007) (holding that a plaintiff has 30 days to refile his state law claim in state court after a federal court's entry of the order of dismissal); *Roden v. Wright*, 611 So.2d 333 (Ala. 1992) (plaintiff's refiled action conformed with 28 U.S.C. § 1367(d) where the plaintiff refiled his state law claims within 17 days after the federal court's dismissal of the plaintiff's state law claims without prejudice); *Tolbert v. Briggs & Stratton Corp.*, 510 F. Supp. 2d 549, 557 (M.D. Ala. 2007), *aff'd*, 256 Fed. Appx. 340 (11th Cir. 2007) ("Pursuant to 28 U.S.C. § 1367(d), the applicable statute of limitations under state law will be tolled 30 days so as to allow [a plaintiff] time to refile that claim in state court.").[5]

Because the court is either granting judgment against the Plaintiff or dismissing with prejudice the claims as to all of the federal claims giving rise to original jurisdiction in this court, the court finds no basis upon which to allow the remaining state law claims to proceed and declines to exercise its supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). Therefore, the court will DISMISS the state law claims WITHOUT PREJUDICE.

---

[5] The Court in *Ingram* gave no explanation for why the inquiry into the statute of limitations is necessary, given the tolling provision in § 1367(d). *See Ingram*, 167 Fed. Appx. 107. This court can only surmise that such an inquiry might be necessary given that § 1367(d) has at least one limited exception—it does not apply to suits against nonconsenting States. *See Spector v. Norwegian Cruise Line Ltd.*, 545 U.S. 119, 141 (2005) (citing *Rygor v. Regents of Univ. of Minn.*, 534 U.S. 533 (2002)).

## IV.     CONCLUSION

For these reasons, the court will DISMISS WITHOUT PREJUDICE Plaintiff's state law claims in Counts VI through IX. The court will DISMISS WITH PREJUDICE the assault and battery and interference with civil rights portions of Count I and Count V in its entirety.

The court finds that Defendants' motion for summary judgment is due to be GRANTED as to all claims against Defendant McGrady, as to the false arrest and false imprisonment portions of Count I, and as to Counts II, III, and IV in their entirety. The court will ENTER JUDGMENT in favor of Defendants on these summary judgment claims only.

As the court previously dismissed Defendant Matt Caballero and Count X for Outrageous Conduct and Intentional Infliction of Emotional Distress under Alabama law (Text Order dated February 25, 2014), no claim remains pending.  The court will DIRECT the Clerk of Court to close this case.

DONE and ORDERED this 29th day of August, 2014.


_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE